5 minutes for a rebuttal. All right. Go ahead, please. It pleases the Court. Karl Poas on behalf of Plaintiff Appellant Taylor Lemons. Lemons' claim was dismissed on a failure to the interpretation of Oregon statutes. In answering the questions that are before the Court, claim should survive if the allegations accepted as true state a claim that are plausible on its face. The most critical facts are as follows. On October 25, 2014, plaintiff began working for either Walgreen Western or Walgreen Eastern. There's no dispute that plaintiff was employed by one of these entities until December 31, 2015. Right. We've read the complaint. Okay. My question here is, so the Oregon Supreme Court has said that we have determined whether there was a termination for the purposes of the statute by looking at all the circumstances. And then under Iqbal, merely alleging in the complaint that your client was terminated on such and such a date is not a fact that we assume is true. That's the fact that we have to determine here whether your client was terminated. So what specific facts in the complaint do you contend show your client was terminated other than the fact that the merger occurred? Well, one, the fact that the three defendants are all separate legal entities. Only? So the merger occurred. I understand that. The merger occurred. Are there any other facts you allege in your complaint? Yes. So. That which you say would show your client was terminated. Walgreens Midwest did not conduct business in Oregon until after, until January 1st of 2016. It was either Walgreens Western or Walgreens Eastern. So my client couldn't have been employed by Walgreens Midwest until after they started conducting business here. And. Well, your client didn't, to my knowledge, your client nor any of the individuals involved here were not even aware that there was a difference because it was a paper transaction that occurred heaven knows where. And they just same hours, same benefits, everything just continued on. Well, they started working for a different entity though. And that's the important factor. They didn't know that. They got a check, you know, or they, whatever the direct deposit was came from Walgreens. It was still Walgreens. Yeah, because, because a fourth party issued the paychecks. Okay. Companies all the time use a payroll services, um, for, for people. The important thing, according to the Oregon Supreme Court, that alleged in your complaint, right? I mean, that Walgreens Co was listed as, uh, you know, the employer on his tax documents. Walgreens Co was the, um, ran the HR department that your client was directed to consult. Should there be any HR problems? So it seems to me that, you know, if this was a different type of case, there would try to be arguing that Walgreens Co was a joint employer of their clients throughout this period. And Walgreens Co could be a joint employer. That doesn't mean that my client wasn't employed by Walgreens Western or Eastern, and then subsequently employed by Walgreens Midwest. Either way, there was a termination of his employment with either Western or Eastern, and a new employment relationship began on January 1st, 2016. There's, that's the, the, um, Oregon Supreme Court has said the inquiries on the relationship between the employer employees, not, not the terms and conditions of employment. It doesn't matter if it is a smooth transition to a new company. That happens in sales all the time, and Oregon courts have still determined that that's a termination of employment. Can I ask about in your reply brief, you say an example of a sale that would not result in termination would be if Company A is sold to a new owner, but that owner continues to operate Company A as is, all employees would still be employees of the same legal entity. So that seems very much to describe what happened here. So why, why do you think in that case there's no termination, but in this case there is? Well, because Company A stopped conducting, stopped conducting business in Oregon. Company A no longer existed after the merger. Company A disappeared. My client went to work for Company B. It is true, I believe, and that's, it's actually discussed as part of the legislative history for the enactment of 652.140 subsection 6. The reason for that section is because they do discuss when they were enacting that statute that if I buy Company A, the only thing that changed is the owner of the company, but the company and the employer is identical. If I buy Company A and merge it into my own company, Company B, then the employer changed. It's not about who owns the business, you know, separate, Walgreens Co. doesn't own any of these LLCs directly. There's numerous other LLCs in between Walgreens Co., but the owner of the companies doesn't matter. It's the relationship between my client and the entity, and if that relationship is terminated, it constitutes a termination and final wages are owed. There isn't a direct, to my knowledge, there's no direct Oregon Supreme Court case right on point, but there is one which says that a sale of a business, which is actually even more dramatic than what we're talking about here, a sale of a business constitutes termination if the sale was not seamless, okay? In this case, there wasn't a sale of a business, it was just simply a transfer of a person's, if you will, a transfer of their employment relationship to a new entity, but in this case, there's no question it was seamless. In fact, the only time that your client found out that he had actually been employed by this other entity was when he terminated himself, when he was no longer working for Walgreens. That's what he found out. If he's still working there, he may not even know to this day. I believe you're referring to the Wilson case. So that court didn't actually say what you just said that it did. The defendant in that case argued it didn't apply because they said it was a seamless transaction. The court said, we're not going to address that because our review of the facts is it wasn't a seamless transaction. But if you look at, and so Wilson doesn't say- But there's no dispute here that this was a seamless transaction. I mean, it's not like you've come to the court here or went to the district court and said, well, you know, this really wasn't a seamless transaction. Well, I don't think I technically pled that this was a seamless transaction. I think you can, maybe you're inferring the facts in favor of the defendant. No, I'm not. But again- Is there any evidence that it wasn't a seamless transaction? Well, what I pled was his termination ended and a new employer started. That, we're right back to what Judge Sung was talking about. I understand that's what you pled, but we don't, I'm asking you what the evidence was. What evidence? You could have specific factual allegations beyond, so that just saying they were terminated under federal pleading standards is not enough to say on a motion to dismiss that they were this internal corporate merger. Are there, we are directed by the Oregon Supreme Court and Xrel Nielsen that we have to look at the totality of the circumstances. So is there anything else that you specifically allege shows your client was terminated? Any other specific facts aside from the corporate merger? And I understand you're also arguing the timing of the doing business in Oregon of the subsidiaries. Are there any other specific facts in the complaint that you contend show a termination occurred? Well, again, it's the fact that he was performing work for one legal entity that operated stores here. Nothing else besides that and the other things like that? Well, the performing of work is what makes you an employee of an employer. How does that show termination? Because he stopped performing work for that company after December 31st, 2015. And again, Wilson does not say it can't be a seamless transaction. I believe it was the EPI case was a sale. Also, I mean, this court in California, in the Samsoni case, was a merger of two companies, seamless transaction. And this court determined that's still a termination of the employment. Everything was seamless onto this new company. Their statutes are very, very similar to ours and they also don't have a definition of termination. This wasn't even a merger. This was just a transition. It wasn't even a merger of the same company. No, it was a merger of entities. Yeah, I understand, but it was... Actually, four separate legal entities merged into one. Two of them are relevant or three of them are relevant here. Not the same company. Three separate legal entities, Walgreens, Eastern, Western, Midwest. Under the same umbrella is what I'm... That's irrelevant, completely irrelevant. Yeah, okay. Again, so moving on to the discovery rule, I guess. There, the Oregon Supreme Court has held that the discovery rule applies through ORS 12.010. Can we talk about Sansone? Sure. The merger there was entities that were already wholly owned by... They were not entities that were already wholly owned subsidiaries of the same corporation. Here, the employees knew about the merger. The employees received their paychecks from different entities before and after the merger. You just don't have that here because as Judge Sung said, it was the same Walgreens Co. company that was issuing the paychecks before and after the merger. That's merely a company that's issuing a paycheck. We did not allege that Walgreens Co. was his employer in this lawsuit. They weren't his employer. It wasn't his employer. You dismissed so quickly my suggestion that it was under the same umbrella. That's why they have the Walgreens Co. You can go on. Walgreens Co. owns hundreds or thousands of different chains of pharmacies across the United States. So if it's... I could... ...Edge Pharmacy in Tennessee that Walgreens owns, his employment ends there and he starts at Walgreens Midwest. No, I think that your argument would be very different if we had a situation in which Walgreens were to take over or absorb a small pharmacy chain and then employees were either terminated or some employees were either terminated or relocated or their job duties changed or something went on. And I think you would fall then within the Wilson ambit. But that's not what happened here. And I guess that's not my point is Walgreens owns pharmacies with other names other than Walgreens Midwest also. So if someone goes from that to Walgreens Midwest, there's still a termination of employment because the actual employer is the subsidiaries. You can't, in a normal employment law lawsuit, I can't sue the parent company. I have to sue the entity that actually employed my client. And so to extend it just because possibly 50 layers up the ladder of a gigantic worldwide corporation, they're somehow connected by owning stock in each other. That doesn't make it so that Walgreens Co was somehow my client's employer in this situation. Why did the employment from Eastern or Western to Midwest happen a few weeks before the merger? Can you explain that? We don't know any of that because we haven't gotten to the discovery stage in this lawsuit. This was on a motion to dismiss. We still don't even know which entity actually employed him. We only know it was either Eastern or Western. What are you basing your allegations of the timing on then? Because they were the ones conducting the business in Oregon. Well, I understand Walgreens points out that you contend that the termination happened as a result of the merger, but then you contend in your complaint that the termination occurred before the merger. So what are you basing the date of termination on? I don't base it on that a merger occurred. We agree it happened 26 days before the merger. Who agrees with that? What's that? Who agrees with that? I do. That's what we pled, that the termination occurred and then a merger happened 26 days later. How did you get that date? From doing research and stuff. I conducted research into these entities before I filed the lawsuit. But it still is curious, isn't it? You're saying that his employment with Eastern or Western ended at the end of, what, December of 2015, that he starts working for the new entity January 1, but then the merger doesn't happen until January 26. So I'm unclear then on how the change in entity in any way caused the termination. Again, I mean, he stopped working for one entity. His employment was terminated when they stopped doing work here. And I guess I'm out of time. So. All right. Thank you. You went 21 seconds over, but we'll give you time for rebuttal. Good morning. May it please the court. My name is Ryan Kunkel from Stowe Reeves. I represent appellees in this case. We ask that this court affirm the trial court's rulings that first, plaintiff's employment was not terminated in 2015. And second, the discovery rule does not apply to Oregon final paycheck claims. This case presents two very narrow issues that can be easily resolved. As to the first issue, this court can affirm simply based on the plain language of the statutes at issue here. We look at the first statute, ORS 652-140. That says that when an employer discharges an employee or when employment is terminated by mutual agreement, then any unpaid wages must be paid within the next business day. The penalty for failure to do that is in 652-150. And that says when employment ceases as provided in subsection 140, then a penalty is owed. So we have three key terms here. Discharge, terminate, and cease. All of which point to the same conclusion. The legislature did not define any of those terms. So here in Oregon, we look to Webster's to understand their plain meaning. And Webster's defines discharge to mean to dismiss. Dismissal from employment. But you've never argued previously that your client didn't actually discharge Mr. Lemons, right? And I looked in your briefing and that you're arguing that the statute should be narrowly construed as only reeling to a discharge. You've been resting your whole case on the idea that the merger didn't cause a termination. Is that correct? It didn't cause a termination because it didn't result in a cessation of employment, which is what the plain meaning of each of these terms requires. Let's focus on the arguments you preserved, okay? Because I did look for... Because I do think the statute could be more narrowly construed as only implying when the employer discharged. But I didn't see you ever make that argument before. Can you point to me where you've ever made that argument before? So we didn't focus on the term discharge, Your Honor, because all of these terms are effectively synonymous and courts consider them to be interchangeable. So we focused on the term termination. And here again, the dictionary defines termination to include discontinuance of or to end. They all contemplate a cessation of employment. You have to stop working. That comports, of course, with our ordinary understanding of what it means to be terminated or to be discharged from your job. You lose your job. You go home and you tell your friends and family... Well, what about a situation where there's a merger between two entities, even under the same umbrella, such as what occurred here, and the one entity has certain personnel policies, payment policies, leave policies, and other things which are then imputed into the new entity and apply to the employee. Now, they may continue working, but they're working under very changed and different circumstances. Now, that's not what happened here. But I'm asking you, in your view, does that make a difference? So they're not fired. Sure. Those circumstances start to look a bit more like a severance of the employment relationship. Yes. As the Supreme Court requires in Nilsen v. Johnston, right? That court says termination is a severance of the employment relationship, not a mere temporary cessation of work. In other words, to have a severance of the employment relationship, there must be a cessation of work. And in Wilson, the Court of Appeals actually suggested, if there is a change in the employer-employee relationship, it doesn't matter whether the transition was seamless. They could have never stopped working. They could have gone from day one to day two. But if there was an actual change in the employment relationship, they at least suggest that that would satisfy the statute. That would be a termination under the statute, even if it was seamless. They don't have to reach that issue because they said here it wasn't seamless. But I think we're still back to then, you know, the totality of the circumstances test here, whether a termination occurred. Because it's not defined, and the Supreme Court just said, we look at the totality of the circumstances. So we have apparently novel circumstances that no court has ever addressed before. Is that correct? Correct. As far as I'm aware, no court has considered the circumstances here where an employee has no idea that they were supposedly terminated, and they continue working. They continue getting paid. Why don't we need more information to make the determination of whether there was a termination here? Based on the nature of the premerger. Because it's plaintiff's obligation to allege the facts to support the assertion of termination. And in the complaint, there are no such facts. The only facts that are alleged that relate to plaintiff's employment all show a continuation of employment, not a termination. As the judges has already pointed out, we have the same name of the company on the employee's paycheck. We have the same tax identification number, the same central human resources services. And those are all of the facts that have been alleged. But I suspect if we had more facts in the complaint, they would also show a continuation of employment. There was no change in local management. There was no change in anything, actually, right? Because he did not know that he had been changed, this new entity, until he left. And then he found out. That's correct. That's what plaintiff alleges. That's his own allegation. Correct. In your briefs, you seem to focus more on whether the transition was seamless as being dispositive. But today, it sounds like you're making a different argument. Are you sort of backing away from the seamless point? No, no, Your Honor. The seamless language comes from Wilson, which, of course, considered the effects of a sale of a business. And we talked about Wilson and a seamless transition between entities because the facts of Wilson are the closest to the facts that we have here in that the people kept working, right? As I mentioned, I'm not aware of a single other case that contemplates the circumstances here where a court tries to decide whether someone who has kept their job was nonetheless somehow terminated. But in the context of a sale, which again, of course, we don't have here, the court there looked at the facts and said, this was not a seamless transition, right? There was, first of all, a sale. But then second of all, some people didn't keep their jobs. Those who did keep their jobs had to reapply to work for the buyer. That's a critical fact. Do you agree that a reading of Wilson that says that if the transition is seamless, then there's no termination is an over-reading of Wilson? I think that's implied by Wilson. And as a matter of fact, it's supported by the statute that Wilson construes, 652.140, subsection 6, which requires a termination that results from a sale. So the statute itself contemplates that a termination does not necessarily result just because you have a sale. Okay, so to the extent that your briefing kind of gave that impression, then you're saying that was not the impression you intended to convey. Is that right? I'm sorry, can you state again what the impression was? My sense from your briefing was that you thought that if a transition was seamless, then there was no termination. But it sounds like you're not saying that today. If the transition was seamless, does that result in a termination? No, I don't think that that would result in a termination because you need a severance of the employment relationship. If there was a true sale, and realize again, did Wilson actually hold if there is a sale and the transition is seamless, then there is no termination? Or did Wilson not actually go that far? Wilson didn't need to go that far, that's correct. Thank you. Yeah, sorry, I was confusing on that point. I may have misspoken about the no termination, but that was the point I want to clarify. Well, in Wilson, I mean, you don't need to be a labor lawyer to know that in Wilson, there was a termination because they actually did, they said, you don't have to reapply for your job if you haven't been pre-terminated. I mean, you don't need to reapply for a job that you already have. So they were in fact terminated. And it appears to me that they, I mean, I can't speak for the Oregon Supreme Court, that's for sure. But it appears to me that had there been just the sale and everybody would have kept their jobs and there was no difference. There was just a paper sale somewhere, which often happens in businesses. And things just continued on and nobody lost their job. Nobody had to reapply. It seems to me like the Oregon Supreme Court, given the language in Wilson, would not have found that there was a termination. I completely agree. And to my knowledge, there is no such case that says if there is a sale, that automatically means there is a termination. There was a reference to the California case Sansoni earlier. The facts in those cases are very similar to Wilson. Not all of the employees kept their job. There was an announcement of the merger and said, sorry, as a result of this, some people are going to lose their jobs. I'm not sure it's going to make any difference in this case, but I will point out to you that in Wilson, the court's whole discussion of termination of employment is saying that Oregon law is different from California law, other states' law, and that the purpose of Oregon law is served even if an employee moves from one employment relationship to another with no gap in pay or benefits. And they said it makes no difference whether or not the former employer was immediately replaced with a new one. A former employer is as likely to exploit a superior economic position when the transition to new employment is seamless as when it is not. So it seems to me the Court of Appeals is going pretty far in suggesting that if there is a true change in employer, even if the transition is seamless, that's a termination for purposes of Oregon law. Would you agree that's at least the implication of what I just read? That can be an implication of that part of the opinion, Your Honor. But what's also interesting is that the court relies on Nilsen v. Johnston to say that there must be a severance of the employment relationship and that the courts must look at the totality of the circumstances, as you mentioned earlier, and the totality of the circumstances in Wilson were a fundamental change in that employment relationship. So the employment relationship was severed from the first party on the second. So I guess my question here is should our focus be on how seamless the transition was or whether there was actually a change in the employer? The focus should be on whether the employment relationship was severed, whether employment actually ceased. So do any of the facts in the complaint, specifically alleged, show that there was a severance in the employment relationship? No. To the contrary, the only facts that are alleged that relate to his actual employment all show a continuation of employment. Well, I think opposing counsel's entire point is that as a matter of law, because not as a matter of fact, but as a matter of law, there were changes when it went from one Walgreens entity to another, and that was enough. That's plaintiff's allegation, correct? Yeah. And obviously you disagree with that. I do. And interestingly, the change of the employer identity is also simply supported by an assertion. We have no idea what happened, supposedly on January 1st, 2016. Plaintiff simply asserts that he was employed by one entity on the 31st of December and then employed by another entity the next day. We don't know why. I'm running a... My question, since these are novel circumstances, do you think it would be appropriate to certify to the Oregon Supreme Court? So I don't think that's necessary or appropriate here because, again, as to the termination question, the answer is provided by the plain language of the statute. Termination and cessation of employment and discharge all require a cessation of employment. We already know how the Oregon Supreme Court defines termination. It requires a severance of the employment relationship or a complete cessation of work. So certifying this question to the Oregon Supreme Court serves no purpose here. And I think, now that I think about it with the benefit of both arguments, I think that what the Oregon Supreme Court was looking at, in my view at least, was the boots-on-the-ground relationship, not the legal relationship somewhere in Chicago, if you know what I mean. Mm-hmm. You know, what actually was going on with these employees, boots-on-the-ground in that particular employment. And in that case, they said, boots-on-the-ground, they had to reapply. They had, you know, it was clearly a situation where their employment terminated and they got re-employed, some, some maybe not, but very different from this case. I would agree with that, which is why we need to look at the totality of the circumstances. So we have just a bit of time remaining here. Does the court have any questions as to the second issue on the discovery rule? I'd be happy to address them. No, I don't. Do you have any questions on the discovery rule? Okay, Judge Sung doesn't. I do not, thank you. Okay, thank you very much. All right, thank you. All right, you've exceeded your time, but we'll give you two minutes. Mr. Post. Thank you, Your Honor. If I could just quickly go back to the Sanze case, because the court mentioned that there was no, there weren't indirect subsidiaries there, but actually in that case, the merger occurred approximately six months before the termination. When the merger occurred, TWCA became an indirect subsidy of CCI and the plaintiffs continued to work for that indirect subsidiary. And then approximately six months later, they switched to another indirect subsidiary of the parent company. And this court determined that under those circumstances, which appear remarkably close to the circumstances here of indirect subsidiaries and switching from one separate entity to another, that's the termination of the employment. The employment ceased to exist. The other thing is in Iker, that was a sale with a seamless transition. Oregon Court of Appeals, not Oregon. That wasn't an Oregon case, was it? That was an Oregon case. It was Oregon Court of Appeals, not the Supreme Court. Yeah, I thought, yeah. But it was a seamless transition. No, you didn't have to interview. Nothing changed with their job. They just moved. What was the name of that case again? Iker B. Iker, okay, yeah. It's A-I-C-H-E. No, I know what it is, yeah. And the other thing is it wasn't argued below that he wasn't employed by Eastern or Western and then his employment changed. Even in their answering brief, in their factual statement, it says the plaintiff was employed by Eastern or Western and then companies merge. And then in 2019, his employment ended with Midwestern. And so there's obviously a termination. At some point, if they conceded in their answering brief that he was employed by either Western or Eastern and then in 2019, his employment ends with Midwestern, there had to be a termination of that other employment relationship at some point. And just about the court asking about the certification, I guess I think it would be appropriate to certify this to the Oregon Supreme Court. All right. Thank you all very much. Thank you for helpful arguments from both counsel. We are adjourned. All rise.
judges: KOH, SUNG, Ezra